FILED
2007 Apr-11  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CORSTIAAN A. KOK,            )

      PLAINTIFF,          )

VS.                    )        2:05-cv-2201-JHH

KADANT BLACK CLAWSON, INC., )

      DEFENDANT.        )

## MEMORANDUM OF DECISION

The court has before it the December 28, 2006 motion (doc. # 29) of defendant Kadant Black Clawson, Inc. (KBC) for summary judgment.  Pursuant to the court's January 4 and 17, 2007, and February 9 and 27, 2007 orders, the motion was deemed submitted, without oral argument, on March 7, 2007.

### I. Procedural History

Plaintiff Corstiaan A. Kok commenced this action on August 15, 2005 by filing a complaint in the Circuit Court of Jefferson County, Alabama, alleging discrimination in violation of the Alabama Age Discrimination in Employment Act of 1997 (AADEA), Alabama Code §§ 25-1-20 through 25-1-29.  Defendant removed the complaint to this court on October 25, 2005, asserting diversity

jurisdiction.  Plaintiff filed a motion to remand on November 2, 2005, which the court denied on November 17, 2005.

Plaintiff contends in his complaint that defendant terminated him because of his age.  Defendant's December 28, 2006 motion for summary judgment asserts that plaintiff failed to establish a prima face case.  In the alternative, defendant contends that plaintiff failed to offer evidence sufficient for a jury to conclude that defendant's legitimate, nondiscriminatory reasons for his termination were pretext for age discrimination.

Both parties have filed briefs and submitted evidence in support of their respective positions.  Defendant submitted a brief (doc. # 31) and evidence[1] (doc. # 32) in support of its own motion for summary judgment on January 11, 2007.  On February 15, 2007, plaintiff filed a brief (doc. # 43) and evidence[2] (docs. # 44-47) in opposition to defendant's motion for summary judgment.  On March 7, 2007, defendant filed a brief (doc. # 50) in reply to plaintiff's opposition.

---

[1] The defendant submitted the following evidence: affidavit of Woody Tyler; excerpts of deposition of Corstiaan A. Kok and exhibits; excerpts of deposition of Tobin Alt and exhibits; excerpts of deposition of Robert Cicale and exhibits.

[2] The plaintiff submitted the following evidence: deposition of Corstiaan A. Kok, plaintiff's deposition exhibits 1-35 and defendant's deposition exhibits 1-12; deposition of Tobin Alt; deposition of Robert Cicale; memorandum from Auburn University regarding Kok; handwritten notes from Nancy Miles regarding hire date; e-mail from Mildred Morris to Nancy Miles.

Before the court addresses the motion for summary judgment, the court must first rule on Kok's March 1, 2007 motion (doc. #49) to strike portions of the declaration of Lynwood Tyler.  Defendant filed an opposition (doc. #51) to the motion to strike on March 15, 2007.  Plaintiff first asks the court to strike paragraphs 3, 4 and 5 on the grounds that Tyler has no personal knowledge of the company's action before his employment with KBC.  (Doc. #49 at 2-4.)  As correctly noted by defendant, paragraphs 3,4, and 5 contain background information, are offered to place events in the proper context, and "have no impact whatsoever on any material facts relative to" the claim in this case.  (Doc. #51 at 2 (emphasis omitted).)  Moreover, many of the statements are corroborated by evidence submitted by plaintiff in opposition to the motion for summary judgment. As such, plaintiff's motion regarding paragraphs 3,4 and 5 is due to be denied

Plaintiff next asks the court to strike paragraph 8 for multiple reasons, including, because "there is no time frame referenced", the "witness is not an expert witness and cannot testify as to "[t]he potential liability . . ." and there is no basis for the statement.  (Doc. #49 at 4-5.)  Paragraph 8 refers to a conversation between plaintiff and Tyler about the decision by KBC to terminate the pulp washing line of equipment.  The court rejects plaintiffs arguments.  First, there is

3

no requirement that the statement include the specific date of the conversation.[3]
Second, plaintiff's concern with the part of the paragraph regarding the "potential
liability" is unfounded.  The statement is clearly factual and not opinion evidence
for the reasons stated by defendant in its opposition to the motion to strike.  (See
doc. #51 at 12.)  Moreover, plaintiff's own testimony clarifies the context of the
statement, and makes it clear that plaintiff understood Tyler's concerns regarding
the potential exposure to liability created by this equipment.  (Kok Dep. at 124.)
Plaintiff's motion is due to be denied regarding paragraph 8.

Plaintiff also asks the court to strike paragraphs 9, 10, 11, 12, and 13.   In
paragraphs 9 and 10 Tyler describes the decision-making process and underlying
rationale which led him and Peter Flynn, Vice President of Operations, to demote
Barry Trippe and hire Tobin Alt as General Manager.  Then, in paragraphs 11
through 13, Tyler states the decision-making process and rationale which led him,
Flynn and Alt to replace Bill Haren, hire Robert Cicale and Kurt Skrifvars, and
terminate plaintiff.   Plaintiff's basic argument as to each of these paragraphs is
that Tyler may not testify as to another's mental impressions or beliefs.  (See doc.
#49 at 5-8.)

---

[3] Moreover, as defendant highlights, plaintiff testified about this conversation in his
deposition and stated that it occurred sometime in 2003.  (Kok Dep. at 122.)

4

Plaintiff's argument fails as to the bulk of the statements. The vast majority of the allegedly objectionable statements are Tyler's personal observations from his participation in the decisions at issue, including paragraphs 10, 11, and 12. Such testimony is clearly admissible. See Fed. R. Evid. 701. Some of the statements, however, fall outside the realm of Tyler's personal knowledge. The court agrees with plaintiff that in paragraph 9, it is impermissible for Tyler to testify as to Peter Flynn's concerns regarding the financial performance of Goslin. As such, that small portion (which amounts to Peter Flynn's name) is due to be striken. The remainder of the paragraph is admissible. Additionally, the first two sentences of paragraph 13[4] are due to be striken as Tyler has no personal knowledge of the mental impressions or opinions of Alt in his decision to recommend hiring both Cicale and Skrifvars and terminate Kok.[5]

Accordingly, the motion (doc. #49) to strike portions of the declaration of Lynwood Tyler is **DENIED** as to paragraphs 3, 4, 5, 8, 10, 11, and 12. The motion

---

[4] The last sentence of paragraph 13 states the ages of Skrifvars and Cicale at the time of their hire. Plaintiff makes no argument regarding this sentence. The court, therefore, concludes that plaintiff has no objection to the last sentence in paragraph 13.

[5] As to the other objections raised by plaintiff, the court has noted and considered these characterizations. The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the court during the summary judgment process. Immaterial evidence, irrelevant evidence, and other evidence that could not be reduced to admissible form at trial, see Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999), was rejected by this court when making its final decision on defendant's summary judgment motion.

5

is **GRANTED** as to the above-referenced portion of paragraph 9 and as to the first

two sentences in  paragraph 13.[6]

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrate

the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at

323.  Once the moving party has met its burden, Rule 56(e) requires the

nonmoving party to go beyond the pleadings and by its own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific

facts showing that there is a genuine issue for trial.  See id. at 324.

---

[6] Although a nice exercise in the rules of evidence, the court deems this motion borderline frivolous.  As the defendant correctly notes, the vast majority of the portions of the declaration plaintiff moves to strike is contained in other parts of the record, including the plaintiff's own deposition.  In addition, Tobin Alt consistently testified in his deposition with many of the other objectionable statements.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Prop., 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. See Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict

8

motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Applicable Substantive Law

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).

Here, it is undisputed that plaintiff has presented only circumstantial evidence of age discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207

9

(1981)." Combs, 106 F.3d at 1527.  Under the McDonnell Douglas and Burdine

framework, the plaintiff first has the burden of establishing a prima facie case of

discrimination, which creates a rebuttable presumption that the employer acted

illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as

well as the exact elements of the case, are not fixed; rather they are flexible and

depend to a large degree upon the facts of the particular situation.  See, e.g., Nix v.

WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln

v. Bd. of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a

plaintiff establishes a prima facie case of disparate treatment employment

discrimination by showing that he or she was a qualified member of a protected

class and was subjected to an adverse employment action but that otherwise

similarly situated employees outside the plaintiff's class were treated dissimilarly.[7]

See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d

1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185

(discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074

(5th Cir. 1981) (wages).

---

[7] See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in
Title VII cases, and the specification above of the prima facie proof required from respondent is
not applicable in every respect in different factual situations.").

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[8]  See Rojas, 285 F.3d at 1342; Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[9]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25.  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext

---

[8] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[9] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

11

may include the same evidence offered to establish the prima facie case.  See
Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and
the defendant under the McDonnell Douglas and Burdine framework, "[t]he
ultimate burden of persuading the trier of fact that the defendant intentionally
discriminated against the plaintiff remains at all times with the plaintiff."  Burdine,
450 U.S. at 253.  Given that the ultimate burden of persuasion always lies with
the employee, a plaintiff may prevail on an employment discrimination claim and
may also defeat a summary judgement either by proving that intentional
discrimination did indeed motivate the defendant or by producing sufficient
evidence to allow a rational trier of fact to disbelieve the employer's proffered
legitimate reasons, thus permitting but not compelling the trier of fact to make a
finding of illegal discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary
sufficient evidence by plaintiff will not always prevent the employer from
prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's
prima facie case, the probative value of the proof that the employer's explanation
is false, and any other properly considered evidence that supports the employer's
case are among other factors to take into account in evaluating a Rule 50

12

motion);[10] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

## IV.  Evaluation of Plaintiff's Claim

The complaint in this case alleges a violation of the AADEA.[11]  More specifically, plaintiff claims that defendant wrongfully terminated him because of his age.  The undisputed facts relevant to his theories of recovery are stated below and if the facts are in dispute, they are stated in the manner most favorable to plaintiff, as he is the non-moving party.[12]  Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima face case for

_____

[10] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

[11] The AADEA provides that it is "an unlawful employment practice for an employer to . . . discharge an individual . . . because of the age of the individual." Ala.Code § 25-1-22 (1975).  It is undisputed that the court uses the same standards in evaluating plaintiff's claims under the AADEA as the court would use in evaluating claims under the federal Age Discrimination in Employment Act.

[12] In their briefs, the parties spent numerous pages reciting the "undisputed facts."  The court does not recite the facts in a separate section, but includes only those facts it deems relevant to the claim at issue.  The court considered all the relevant facts as written by both parties in their briefs (excluding any inappropriate argument or statements not supported by citation to the record) in making its determination.

plaintiff's claim against defendant.  In the alternative, defendant argues that plaintiff failed to offer evidence sufficient for a jury to conclude that defendant's legitimate, nondiscriminatory reasons for his termination was pretext for age discrimination.  As such, defendant contends it is entitled to summary judgment on plaintiff's termination claim.

### A.  Prima Facie Case

As outlined in detail above, the Eleventh Circuit uses the framework established in McDonnell Douglas and Burdine to evaluate discrimination claims that are based upon circumstantial evidence of discrimination.  Chapman, 229 F.3d at 1024 (citations omitted).  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  See Combs, 106 F.3d at 1527-28 (citations omitted).  One method a plaintiff can use to establish a prima facie case of age discrimination (and the method chosen by plaintiff) is by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual.  Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997).

It is undisputed that Kok is a member of the protected group and that he was subjected to an adverse employment action, termination.  KBC contends that Kok

cannot establish that remaining two elements of his prima facie case: (1) that he was qualified for the position and (2) that he was replaced by a younger individual.  The court addresses each contention separately.

### 1.  Qualified

As relevant to this claim, Kok began working for KBC in November 2002, at the age of 62, as an account manager at its Goslin Division.[13]  (Kok Dep. at 76-79, 96; Exs. 4-5 to Kok Dep.)  KBC created this new position as a result of its decision to sell a pulp washing product[14] and was interested in someone  to handle the engineering design, sales and service related to that product.  (Kok Dep. at 67-69, 73-75.)   Kok had an extensive background in the pulp and paper industry, with special emphasis with pulp washing equipment.  (Id. at 22-48.)   Kok testified that at the time of his hire, he understood that KBC expected him to focus primarily on the sale of pulp washing equipment, "secondarily, the

---

[13] KBC designs, manufactures, sells and services equipment, parts and systems for customers which consist primarily of paper manufacturers and companies that operate pulp and paper mills.  (Tyler Aff. ¶ 2.)  In July 1998, KBC acquired a new operating division, Goslin, located in Birmingham, Alabama.  (Id. ¶ 3; Kok Dep. at 57.)  Goslin focused on two product lines of capital equipment.  (Tyler Aff. ¶ 4.)  The first line was recausticization equipment which is used to make chemicals that are used in the cooking process of wood chips.  (Id.)  The second line was heat transfer equipment which is used "to evaporate the water from the liquor that [i]s washed from the [wood] pulp."  (Id.)

[14] Pulp washing equipment is essentially large vacuum drums that wash the pulp by removing chemicals used to cook the wood chips that become the pulp.  (Tyler Aff. ¶ 4.)

recaust[icization equipment], and then any kind of service that we could provide" such as aftermarket services.  (Id. at 96-97.)

Sometime in early 2004, Woody Tyler, the Vice President of Sales and Marketing,[15] decided to abandon the line of pulp washing equipment.  (Tyler Aff. ¶ 7.)  He decided that Goslin should focus exclusively on the manufacture, sale and service of the other two product lines, recausticization and heat transfer equipment.  (Id.; Kok Dep. at 116-17.)  Then, in April 2004, Tobin Alt was hired as the new General Manager of Goslin and was charged with improving the revenue to achieve at least ten percent return on the sales investment by KBC.  (Alt Dep. at 7; Tyler Aff. ¶ 10.)  Alt met with the employees and conveyed the need for immediate improvements in the financial performance of Goslin.[16]  (Alt Dep. at 50.)  In addition, in May 2004, Alt revised the job description for the account manager position.  (Kok Dep. at 175-80; Ex. 11 to Kok Dep.)  The

---

[15] Tyler was hired in early 2003 and given the responsibility for improving the poor financial performance of Goslin.  (Tyler Aff. ¶¶ 1, 9.)

[16] Because Kok was absent that day, Alt met with Kok individually.  (Kok Dep. at 153.)  During that meeting, Alt reviewed with Kok the costs associated with Kok's position. (Id. at 159; Ex. 10 to Kok Dep.; Alt Dep. at 50.)  Alt stated that Kok and his co-worker, Bill Haren, would need to generate at least $500,000 each in sales revenue just to cover those direct costs (Kok Dep. at 159-62; Alt Dep. at 50), and that Kok and Haren would be responsible for generating sales sufficient to cover the $3 million needed to cover the operating expenses.  (Kok Dep. at 160-62.)  Kok's impression from the conversation was "that in order to boost my numbers, we would focus on capital sales and less on" parts and related equipment.  (Id. at 165.)

16

revision included the addition of the basic function of closing sales orders, and deleted the references to pulp washers.  (Id.)

Defendant argues that although Kok was qualified for the job "at the time [KBC] hired [Kok] as an account manager in November 2002" (Def. Reply Br. at 1), he  was not qualified "at the time of his termination," because he [did not] me[e]t the minimum qualifications of the account manager job."  (Def. Br. at 22.) Defendant bases its argument on the fact that the requirements of the job changed when KBC discontinued the pulp washers line of equipment.  (Def. Br. at 23-25; Def. Reply Br. at 4.)  Plaintiff disagrees and maintains that he was well qualified for the position based on his vast experience and knowledge of the paper industry. (Pl. Opp. Br. at 24-27.)

Generally, in age discrimination cases, the Eleventh Circuit focuses on a plaintiff's "skills and background to determine if they were qualified for a particular position." Clark v. Coats & Clark, 990 F.2d 1217, 1227 (11th Cir. 1993).  It is undisputed that Kok had many years of experience in the paper industry, including, but not limited to, experience with pulp washing equipment. Although KBC discontinued its lines of pulp washing equipment, that action did not erase the years of experience Kok had with the other Goslin product lines.  For instance, at the time of his hire, the hiring managers noted that Kok was a "highly

17

technically qualified individual with a strong knowledge of our equipment and an established presence in the mills." (Pl's Ex. 19.)   Moreover, for the two years before his termination, Kok did not focus solely on the pulp washing equipment; he also sold Goslin's recausticization and heat transfer equipment and related products.  As such, at the prima facie stage, the court concludes that Kok was qualified for the position from which he was terminated.

### 2.  Younger Replacement

Defendant contends that Kok failed "to establish the fourth element of his prima facie case, that he was replaced by someone sufficiently younger than he." (Def. Br. at 27.)  Defendant argues that although Kok maintains that Cicale was his replacement, "the person who physically replaced plaintiff (i.e. performed the same duties as plaintiff within the same or similar assigned territory) was Skrifvars, not Cicale."  (Id. at 29-30.)  Kok maintains, however, that Cicale, who is 11 years younger than Kok,  was his replacement.  (Pl. Opp. Br. at 22-24.)

18

The court does not need to decide who actually replaced Kok[17] because both men satisfy the "substantially younger replacement" element of the prima facie case.  Plaintiff was 64 when he was terminated by KBC.  (Pl. Dep. at 8; Alt Dep. at 223.)  Cicale was 53 years old when he was hired by KBC.  (Cicale Dep. at 142.)  This age difference of eleven years easily establishes plaintiff's burden.  See, e.g., Damon, 196 F.3d at 1360 (five year age difference met the substantially younger standard).

As for Skrifvars, he was sixty years old at the time of his hire by KBC.  (Tyler Aff. ¶ 13.)  The age difference between Skrifvars and plaintiff was, therefore, four years.[18]  The Eleventh Circuit has previously held that a

---

[17] Although the court need not make a decision in this regard, the evidence submitted shows that both men replaced Kok.  Neither man was doing the exact job Kok was performing at the time of his termination, but both performed duties and had responsibilities for territories that were covered by Kok.  The court rejects plaintiff's contention that Cicale was the sole replacement for Kok.  Plaintiff's excerpt from Alt's deposition is misleading as his full testimony clearly shows that although Cicale "more or less" replaced plaintiff "when [Cicale] started," "Kurt [Skrifvars] and Bob [Cicale] replaced both of them, [plaintiff] and Bill [Haren . . . .  It wasn't that [plaintiff] had an area that was exactly replaced by [Cicale].  That wasn't the case.  The areas are completely different than what they were" when plaintiff worked at Goalin.  (Alt Dep. at 35-36.)

[18] Although defendant's initial brief states that Skrifvas "was only three years younger" (Def. Br. at 30) and defendant's reply brief states that Skrifvars was "just 2 years younger than" plaintiff (Def. Reply Br. at 5), the evidence shows otherwise.  Tyler's affidavit states that Skrivars was 60 at the time of his hire by KBC.  (Tyler Aff. ¶ 13.)  It is undisputed that plaintiff was 64 at the time of his termination, as he was born on July 2, 1940, and was terminated on November 2, 2004.  (Pl. Dep. at 8; Alt Dep. at 223.)  That is a difference of four years, not three or two years.

replacement who is only three years younger is sufficient to establish a prima facie

case.  Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997) (holding

that plaintiff aged 42, who was replaced by employee aged 39, met the

"substantially younger" replacement requirement under ADEA) (citing Carter v.

City of Miami, 870 F.2d 578, 582-83 (11th Cir. 1989)).  The court rejects

defendant's attempt to distinguish this case from Carter, especially in light of the

Eleventh Circuit's consistent instruction that  "a plaintiff's burden in proving a

prima facie case is light."  Turlington v. Atlanta Gas Light Co., 135 F.3d 1428,

1432 (11th Cir. 1998) (emphasis omitted); see Burdine, 450 U.S. 248, 253 (1981)

("The burden of establishing a prima facie case . . . is not onerous.");  Holifield,

115 F.3d at 1562 (same).  As such, plaintiff established the fourth element of his

prima facie case.

Plaintiff, therefore, established a prima facie case of discrimination.  It is

undisputed that plaintiff is a member of the protected group and that he was

subjected to an adverse employment action, termination.  Additionally, the court

concludes that plaintiff submitted sufficient evidence to establish, at the prima

facie stage, that he was qualified for the position and that a younger individual (or

individuals) replaced him.  The court now moves to the next step in the framework

established by McDonnell Douglas and Burdine .

20

### B.  Legitimate, Nondiscriminatory Reason for Termination

KBC articulated multiple reasons for Kok's termination.  In his deposition, Alt listed several legitimate, nondiscriminatory reasons for terminating Kok.  First, Alt testified that Kok "did not have the skill set that was required to do this job" (Alt Dep. at 221), which included "[a]n in-depth process knowledge of heat transfer and/or recausticizing, which brings with it the ability to identify opportunities and to identify how it is that we will compare to our competitors." (Id. at 222.)  Second, Alt testified that Kok was terminated for his failure to focus on closing orders, which was reflected in his sales figures.  (Alt. Dep. at 98, 221-22, Kok Dep. at 129, 199-200.)  Finally, Kok was terminated because Goslin "didn't have the revenue to have the support people that would have been required for him to be successful in that position."  (Alt Dep. at 221.)

The sum of all these reasons is that Kok was terminated for poor performance and lack of skill set.  The sales manager position changed when KBC stopped selling the pulp washing equipment.  In addition, the position and expectations of the position changed when Alt became the General Manager.  As such, KBC met its light burden of articulating a legitimate, nondiscriminatory reason for Kok's termination.

21

*C.  Pretext*

"[T]o avoid summary judgment [Kok] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination."  Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and quotation marks omitted).  The plaintiff can show pretext through evidence that either (1) a discriminatory reason more likely motivated the employer or (2) the employer's reasons are unworthy of credence.  Combs, 106 F.3d at 1528.  The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (citation and quotation marks omitted).

In his pretext argument, Kok does not present any evidence of discriminatory animus on the part of any decisionmaker at KBC.  In fact, Kok testified that he did not believe that during the course of his employment, Alt or anyone else at KBC had ever discriminated against him based upon his age or any other impermissible factor.  (Kok Dep. at 231-33.)  Instead, Kok's argument that summary judgment is due to be denied is because KBC's "reason for Kok's termination lack[s] any credence."  (Pl. Opp. Br. at 31.)  Kok relies on four forms

22

of evidence to satisfy his burden.  First, Kok testified in his deposition that what
"led [him] to conclude that age might be an issue is the fact that Alt is
"considerably younger" than he and that Alt and Human Resource Manager Ken
Stiers answered "no" too quickly and "in unison" to Kok's question at his
termination meeting if he was terminated because of his age.[19]  (Kok Dep. at 231-
33.)  Second, he relies on the hiring of Cicale as his replacement, whom he
describes as "an unemployed individual with no experience that is 11 years
younger than Kok" as evidence of pretext.  (Kok Opp. Br. at 26.).  Third, he relies
on evidence that "Alt consistently confused and contradicted his testimony as to
the performance issues or skill sets of Kok."  (Id. at 29.)  Finally, he relies on the
timeline as the "most persuasive" evidence of pretext.  (Id. at 31.)  The court
addresses each argument separately, but considers them as a whole in making its
determination as to whether Kok presented evidence sufficient for a jury to
conclude that he was discriminated against because of his age.

        Plaintiff's first evidence of pretext is his own testimony.  Kok testified
that the first time he sensed any type of discrimination was in his termination
meeting, and that in the two years prior nothing occurred that caused him to

---

[19] Although Kok does not address this evidence in his brief, the court deems this evidence
important as it is plaintiff's own beliefs and testimony as to why he feels he was discriminated
against by KBC.

23

believe he had been discriminated against because of his age. (Kok Dep. at 231-34.) Kok testified that in his termination meeting he asked Alt and Stiers "[i]s it because of my age?" and "[i]n unison they said 'No.'" (Id. at 233.) Kok did not believe them because "they were so quick to answer that it was not because of my age." (Id. at 234.) Kok further testified that there was nothing else that led him to conclude that age discrimination played a part in the decision to terminate him. (Id.) This evidence is insufficient for a reasonable jury to conclude that illegal discrimination played a role in the termination decision. Kok's subjective conclusion regarding the swiftness of the negatI've response to the question whether age played a role in the decision does not rebut KBC's legitimate reasons for his termination. See Grigsby v. Reynolds Metal Co., 821 F.2d 590, 597 (11th Cir. 1987) (plaintiff's conclusory allegations insufficient to raise inference of pretext or discrimination where employer offers extensive evidence of legitimate, nondiscriminatory reasons for its acts) (citation omitted).

Although not framed in these terms, plaintiff's second argument boils down to his contention that because he is more qualified than his alleged replacement, Cicale,[20] the reason stated by Alt, that Kok lacked the requisite skill set, is

---

[20] The court notes that Kok does not argue that Skrifvars, the other individual hired into the sales account manager position, was less qualified than Kok.

24

"unworthy of credence." (<u>See</u> Pl. Opp. Br. at 25-26.) Kok argues that Cicale had "no experience selling" and "no experience with Goslin" whereas Kok had "12 years of selling experience with Goslin products." (<u>Id.</u> at 25.) Evidence that an employer hired a less qualified individual to replace the plaintiff may be probative of whether the employer's proffered reason for terminating the plaintiff was pretextual. <u>See</u> <u>Alexander</u>, 207 F.3d at 1340.

The evidence, however, does not establish that KBC hired a less qualified individual in Cicale. Instead, the evidence shows that Cicale was highly qualified for the position, even though his background was different than plaintiff's and admittedly lacked five years of sales experience with the product line offered by KBC in 2004. Cicale had thirty years of experience in the pulp and paper industry, with approximately twenty-five years running pulp mills. (Cicale Resume, Pl.'s Ex. 41.) The lack of sales experience does not negate Cicale's other qualifications, especially in light of the fact that Cicale had vast knowledge and twenty-five years experience operating and purchasing this equipment from manufacturers' sales representatives. The record establishes that Cicale oversaw his former employer's one billion dollar equipment overhaul of its pulp and paper plants in the United States. (<u>See</u>, <u>e.g.</u>, Cicale Dep. at 83-84.) He also had extensive contacts in the industry as he had visited "probably fifty percent of the

25

[pulp and paper] mills in the United States as part of [his] Stone, Champion, Hoerner Waldorf, [and] Blue Ridge experiences."  (Id. at 97.)

In sum, Kok's argument that Cicale was less qualified than he focuses solely on Cicale's lack of sales experience.  Cicale, however, made up for the lack in that area by his vast knowledge and experience in other areas (see, e.g., Cicale Dep. at 98), areas where plaintiff did not have any experience.  Plaintiff's argument, therefore, falls short of creating a genuine issue of material fact on the issue of pretext.

Third, plaintiff contends that Alt's testimony was riddled with confusion and contradictions regarding plaintiff's performance and skill set.  (See Pl. Opp. Br. at 29-30.)  Kok argues that this evidence establishes that KBC's reason for his termination is "unworthy of credence."  Plaintiff's attempts to poke holes in Alt's testimony is unavailing.  Instead, what plaintiff is really doing is quarrelling with the reason stated by KBC for his termination.  Such an argument is unacceptable and does not create a genuine issue of pretext.  This court "do[es] not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather [the] inquiry is limited to whether the employer gave an honest explanation of its behavior."  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir.

26

1988) (citations omitted)); <u>see also</u> <u>Nix</u>, 738 F.2d at 1187 (An "employer may fire

an employee for a good reason, a bad reason, a reason based on erroneous facts, or

for no reason at all, as long as its action is not for a discriminatory reason."); <u>Abel</u>

<u>v. Dubberly</u>, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000).  This court "do[es] not ...

second-guess the business judgment of employers." <u>Combs</u>, 106 F.3d at 1543;

accord <u>Alexander</u>, 207 F.3d at 1339, 1341; <u>Damon</u>, 196 F.3d at 1361 ("We have

repeatedly and emphatically held that a defendant may terminate an employee for a

good or bad reason without violating federal law. We are not in the business of

adjudging whether employment decisions are prudent or fair." (internal citation

omitted)).

What happened here is clear: Alt decided that Kok could not produce the

numbers that were needed to increase revenue at Goslin, and the evidence

submitted to this court confirms that belief.[21]  Kok has not presented any evidence

that Alt did not truly believe that Kok did not have the requisite skills in selling

heat transfer and recausticization equipment, or that his performance to that point

was satisfactory.  The court notes that some of Kok's argument is misleading and

---

[21] The court reject's plaintiff's statement that "In actuality, Kok exceeded the forecast
provided by Alt." (Pl. Opp. Br. at 29.)  First,  Kok provides no citation to the record regarding
this statement.  Second, the record belies such a statement.  Kok testified that he understood that
Alt told him that he and Heren would "have to aim for" the $3 million sales goal.  (Kok Dep. at
160.)  The record shows that Kok's sales fell woefully short.

at some points mischaracterizes the record and testimony presented to the court.

For instance, Kok's brief repeatedly argues, and cites Alt's deposition testimony,

that "Alt had no idea if Kok's sales numbers had increased" after Alt's meeting

with Kok and prior to Kok's termination.  (Pl. Opp. Br. at 13, 29, 31.)  Alt's

testimony, however, clearly shows, when read in context, that Alt could not recall

at the time of his deposition what Kok's numbers were; nowhere in his deposition

did Alt testify that he never looked at Kok's numbers.  (Alt Dep. at 284-85.)  As

general manager of Goslin, Alt was clearly aware of the sales figures and how

much revenue his two account managers were producing; moreover, Alt testified

at length how he calculated Kok's numbers, including what his notations meant

and the individuals he spoke with about different sales.  That Alt never talked to

Kok about his numbers does not establish that Alt did not sincerely believe that

Kok was not performing at the level required.  In sum, this argument fails to

establish that the reasons stated by Alt for Kok's termination were not sincere.  As

such, this argument  fails to create a genuine issue of material fact at to whether

the reason asserted is "unworthy of credence."

Finally, Kok contends that "[t]he timeline in this case is most persuasive."

(Pl. Opp. Br. at 31.)  Kok essentially argues that soon after Alt was hired he set

about to replace Kok "while not even knowing how Kok was performing or if he

was making his sales numbers." (Id.)  This argument is just that, argument, and it is belied by the record presented to the court.  As explained above, the evidence does not reveal that Alt did not know how Kok was performing, and the page of Alt's deposition cited by plaintiff does not support his argument.  (See Alt Dep. at 284.)  In addition, the record is undisputed that KBC located Cicale while searching for a replacement for Kok's co-worker, Haren.  There is no evidence in the record that Alt began efforts to replace Kok in the summer of 2004, as alleged by Kok.  The decision to terminate Kok came after KBC decided to hire both Skrifvars and Cicale as the new account managers.  As such, the timeline fails to create a genuine issue of material fact on the issue of pretext.

For the foregoing reasons, the court concludes that Kok failed to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination."  Brooks, 446 F.3d at 1163 (11th Cir. 2006) (citation and quotation marks omitted).   Kok did not present evidence that either (1) a discriminatory reason more likely motivated the employer or (2) the employer's reasons are unworthy of credence.  Combs, 106 F.3d at 1528.  Summary judgment is, therefore, due to be granted on Kok's claim of age discrimination in violation of the AADEA.

### V.  Conclusion

In summary, the court finds that no material issues of fact remain and that defendant Kadant Black Clawson, Inc. is entitled to judgment as a matter of law as to all claims asserted by plaintiff.

A separate order will be entered.

**DONE** this the  __11th__  day of April, 2007.

_____

SENIOR UNITED STATES DISTRICT JUDGE